## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| TEILL REYNOLDS,<br><br>   Plaintiff,<br><br>   v.<br><br>MABEL ADAMS, et al.,<br><br>   Defendants. | Case No. 24-3132-JAR |

## MEMORANDUM AND ORDER

Plaintiff Teill Reynolds, who proceeds pro se and in forma pauperis, brings this civil rights case arising out of his medical treatment for a fractured wrist during his confinement at the Lansing Correctional Facility ("LCF"), which is operated by the Kansas Department of Corrections ("KDOC"). The remaining named Defendants in this matter are Mabel Adams[1] and Dr. Bryan Wilson, medical providers employed by Centurion, the contracted provider of medical services at LCF.[2] Before the Court is Defendants' Motion for Summary Judgment (Doc. 61), Plaintiff's Motion to Amend Summary Judgment (Doc. 59),[3] and Defendants' Motion to Strike Plaintiff's Motion to Amend Summary Judgment (Doc. 60). The motions are fully briefed, and the Court is prepared to rule. For the reasons explained below, the Court grants Defendants'

---

[1] The parties state in the Pretrial Order that Adams is a nurse at LCF. Doc. 57 at 3–4. Her affidavit states that she is a physician. Doc. 62-3 ¶ 3.

[2] The original Complaint named eight Defendants: KDOC (dismissed at Doc. 4), Centurion (dismissed at Doc. 14), three KDOC employees identified as Captain Lumphry, Unit Team Lang, and Sergeant Pheer (all dismissed at Doc. 14), and three Centurion employees identified as Mabel Adams (nurse), Dr. Bryan Wilson, and an unnamed "female doctor" (dismissed at Doc. 72).

[3] The Court previously denied Plaintiff's Motion for Summary Judgment because Plaintiff failed to come forward with facts that demonstrated he was entitled to judgment as a matter of law with citations to the record. Doc. 58.

motion for summary judgment.  Therefore, Plaintiff's motion to amend summary judgment and Defendants' motion to strike are moot.

## I.    Legal Standards

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  In applying this standard, a court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[4]  "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[5]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[6]  An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[7]

The moving party must initially show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[8]  In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[9]

---

[4] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[5] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[6] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).

[7] *Thomas v. Metro. Life Ins.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[8] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002).

[9] *Adams v. Am. Guar. & Liab. Ins.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

Once the movant has met its initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[10]  The nonmoving party may not simply rest upon its pleadings to satisfy this burden.[11]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[12]  To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript[,] or a specific exhibit incorporated therein."[13]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'"[14]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[15]

In deciding this motion, the Court is mindful that Plaintiff proceeds pro se; therefore, the Court must construe his pleadings liberally.[16]  However, pro se plaintiffs may not rely on conclusory allegations to overcome their burden to establish that a genuine issue of material fact exists.[17]  The Court cannot assume the role of advocate,[18] nor can the Court "supply additional

---

[10] *Anderson*, 477 U.S. at 256.

[11] *Id.*

[12] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998)).

[13] *Adams*, 233 F.3d at 1246 (quoting *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992)).

[14] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[15] *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

[16] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[17] *Hastings v. Campbell*, 47 F. App'x 559, 560 (10th Cir. 2002).

[18] *Hall*, 935 F.2d at 1110.

factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[19]

## II.    Uncontroverted Facts

The following facts are either uncontroverted, stipulated, or viewed in the light most favorable to Plaintiff as the nonmoving party.  Under the standard set forth above, the Court disregards factual assertions presented by Plaintiff if they are not supported by record evidence.[20]

Plaintiff Teill Reynolds has been in KDOC custody as an incarcerated inmate since February 5, 2013.  His earliest possible release date is May 24, 2036.  Plaintiff has been housed at LCF since August 14, 2014.

Under KDOC's IMPP 13-102, general population inmates are provided with access to medical care "through either regular sick call for non-emergency requests or the twenty-four hour per day availability of emergency sick call in accordance with IMPP 16-107D and this general order."[21]  And an "employee who has reason to believe a resident is in need of emergency care shall immediately notify the medical staff."[22]  Then, "medical staff shall evaluate the complaint or situation and take the appropriate actions."[23]  This regulation also requires the contracted health services provider to make arrangements with local area hospital emergency rooms, and with local emergency medical or other ambulance services in the event emergency transportation services are required.

---

[19] *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

[20] *Sanchez v. Guzman*, 105 F.4th 1285, 1299 (10th Cir. 2024) ("[I]n the summary-judgment context . . . . the plaintiff cannot rest on [his] well-pleaded factual averments; rather, the plaintiff must point to record evidence supportive of the plaintiff's position; this means that, though ordinarily the court accepts plaintiff's version of the facts as the starting point for the legal analysis, that version will be cognizable only if it is supported by record evidence.").

[21] *Martinez* Report, Doc. 9-6 at 1.

[22] *Id.*

[23] *Id.*

IMPP 16-108D defines "emergency care" as "[t]reatment of potential life threatening or health endangering incidents or injuries, or acute illness that cannot be deferred until the next scheduled sick call."[24]  In Adams' experience, a medical emergency is usually for injuries such as stab wounds, uncontrolled bleeding, shortness of air, and chest pains.  Otherwise, the resident puts in a sick call and waits for the nursing staff to call, and the resident comes over with a pass.

Plaintiff fell in the shower and fractured his wrist on June 15, 2023.  He first visited the LCF emergency medical clinic the next day, Friday, June 16, 2023, with a pass from an officer. Adams was working at the time.  She does not "recall precisely[,] but it is likely Mr. Reynolds was not in immediate distress since" his fall in the shower occurred the day before.[25]  Adams told Plaintiff that he did not follow the proper procedure to be evaluated for his injury, which she considered non-emergent.  For safety purposes, the appropriate procedure for non-emergency services is for the resident to put in a sick call and wait for the nursing staff to call for him, at which point the resident can go to the clinic with a pass.  Plaintiff demanded to be seen immediately and was disruptive.  The Special Operations Response Team ("SORT") was called, and he left the clinic.

Plaintiff returned for the second time later that day at 12:37 p.m., reporting pain and swelling in his left wrist area.  This time, Dr. Wilson and a nurse practitioner treated him.  Dr. Wilson believed Plaintiff sustained an acute wrist fracture; the treatment notes indicate that Plaintiff presented with an "[o]bvious deformity."[26]  On Fridays, the x-ray technician leaves LCF at noon.  Because Plaintiff was not treated until past that time, an x-ray at the facility was not available until the following Monday.  Dr. Wilson believed the medical clinic was equipped to

---

[24] Doc. 62-4.

[25] Doc. 62-3 ¶ 9.

[26] Doc. 59-1 at 6.

stabilize Plaintiff's wrist in a splint and perform the x-ray the following Monday, so he did not consider transferring Plaintiff to a hospital for treatment. Medical staff placed Plaintiff's wrist and forearm in a splint, scheduled him for an x-ray on Monday, June 19, 2023, provided him with a Toradol injection for swelling and pain,[27] and directed him to take acetaminophen and ibuprofen for pain. According to Dr. Wilson, Plaintiff did not exhibit signs of "extreme levels of pain."[28]

Plaintiff returned to the clinic for a third time at 10:09 p.m. on June 16, complaining of increased swelling, numbness, and pain in his left fingers. Neither Adams nor Dr. Wilson treated him during this visit. Medical staff treated Plaintiff and determined he did not require emergency care. He was instructed to keep his hand elevated to help with swelling.

Plaintiff returned to the clinic on Sunday, June 18, 2023, at 1:13 a.m., complaining of pain. Neither Adams nor Dr. Wilson treated him during this visit. He was given another dose of Toradol, and medical staff determined that he was stable.

Plaintiff returned to the clinic for his x-ray on Monday, June 19, 2023. The x-ray showed a fracture of his distal radius (wrist area). Plaintiff had removed the splint that staff provided on the previous Friday. The next day, Tuesday, June 20, 2023, Plaintiff was taken to a hospital for outpatient surgery on his left wrist and returned to LCF the same day.

Plaintiff has not been treated by any medical professionals for mental health issues since June 16, 2023. His follow-up treatment notes show that he healed well from the surgery.

---

[27] As explained in the *Martinez* Report, "Toradol (Ketorolac) is a powerful NSAID pain reli[e]ver, [and] NSAID is a nonsteroidal anti-inflammatory drug used to relieve moderate-to-severe pain." Doc. 9 at 6 n.1. Plaintiff denies receiving this injection, but he relies on the medical notes from different treatment in July 2023. These notes do not controvert the medical notes from June 16 and 18 showing that he was given Toradol injections.

[28] Doc. 62-7 ¶ 8.

**III.    Discussion**

Plaintiff alleges the following claims for relief against Adams and Dr. Wilson: (1) deliberate indifference to his medical needs in violation of the Eighth Amendment under 42 U.S.C. § 1983; (2) deliberate indifference to his medical needs in violation of the Eighth and Fourteenth Amendments by delaying his medical care, under 42 U.S.C. § 1983; (3) negligence under Kansas law; and (4) intentional infliction of emotional distress under Kansas law.  As explained below, the Court grants Defendants' summary judgment motion on Plaintiff's federal claims and declines to exercise supplemental jurisdiction over the remaining state law claims.

**A.    Deliberate Indifference Claims under 42 U.S.C. § 1983**

Plaintiff brings two individual-capacity claims under 42 U.S.C. § 1983 against Adams and Dr. Wilson based on inadequate and delayed medical care in violation of the Eighth and Fourteenth Amendments.  It is well settled that Plaintiff has a right to custodial medical care, and that a convicted person's right to medical care is protected under the Eighth Amendment.[29]  As Defendants correctly point out, the Fourteenth Amendment does not apply to Plaintiff because he is not a pretrial detainee.[30]  Thus, to the extent Plaintiff purports to assert a separate claim under the Fourteenth Amendment, it is foreclosed as a matter of law.

To demonstrate an Eighth Amendment violation based on inadequate medical care, the inmate must establish "deliberate indifference to serious medical needs."[31]  Deliberate indifference involves "something more than mere negligence," but "something less than acts or

---

[29] *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020).

[30] *See id.* (explaining that a deliberate indifference claim applies to convicted persons under the Eighth Amendment and extends to pretrial detainees under the Fourteenth Amendment).  Plaintiff concedes this point.  *See* Doc. 68 at 2.

[31] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

omissions for the very purpose of causing harm or with knowledge that harm will result."[32] Where a plaintiff alleges that a medical professional failed to treat a serious medical condition properly, "the medical professional has available the defense that he was merely negligent in diagnosing or treating the medical condition, rather than deliberately indifferent."[33]

Deliberate indifference has two components: (1) "an objective component requiring that the pain or deprivation be sufficiently serious," and (2) "a subjective component requiring that the offending officials act with a sufficiently culpable state of mind."[34]  "In other words, the focus of the objective component is the seriousness of the plaintiff's alleged harm, while the focus of the subjective component is the mental state of the defendant with respect to the risk of that harm."[35]

The objective component is met if the deprivation is "sufficiently serious."[36]  "A medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"[37]  The objective component must be evaluated by the actual harm suffered, not by symptoms perceived by the defendant.[38]

The subjective component is met if a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw

---

[32] *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

[33] *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000).

[34] *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991).

[35] *Prince v. Sheriff of Carter Cnty.*, 28 F.4th 1033, 1044 (10th Cir. 2022).

[36] *Sealock*, 218 F.3d at 1209 (quoting *Farmer*, 511 U.S. at 834).

[37] *Id.* (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)).

[38] *See Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005) (stating that symptoms displayed are only relevant to the subjective component of the deliberate indifference test).

the inference."[39]  It "can be satisfied under two theories: failure to properly treat a serious

medical condition ('failure to properly treat theory') or as a gatekeeper who prevents an inmate

from receiving treatment or denies access to someone capable of evaluating the inmate's need for

treatment ('gatekeeper theory')."[40]

Plaintiff advances a separate claim for delayed medical treatment.  In the Tenth Circuit,

"a delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can

show that the delay resulted in substantial harm," which may be satisfied by "lifelong handicap,

permanent loss, or considerable pain."[41]

### 1.    Adams

Plaintiff first alleges that Adams was deliberately indifferent to his serious medical needs

on June 16, 2023, when she turned him away from the emergency clinic the first time he visited

with a pass.

### a.    Objective Component

"Emergency care" under IMPP 16-108D does not expressly include treatment of broken

bones.  That IMPP defines emergency medical treatment as "[t]reatment of potential life

threatening or health endangering incidents or injuries, or acute illness that cannot be deferred

until the next scheduled sick call."[42]  While it is undisputed that Plaintiff had a broken wrist and

was in pain, it is also undisputed that the injury occurred the night before and did not clearly

constitute the type of injury that qualified for emergency care instead of a nurse visit under the

IMPP.

---

[39] *Id.* at 751 (alteration in original) (quoting *Farmer*, 511 U.S. at 837).

[40] *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023).

[41] *Requena v. Roberts*, 893 F.3d 1195, 1216 (10th Cir. 2018) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

[42] Doc. 62-4.

Nonetheless, "a deliberate indifference claim will arise when 'a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical emergency.'"[43]  There are no medical notes in the record about Plaintiff's first visit to the emergency clinic when Adams turned him away.  Plaintiff contends that his arm was obviously broken.   There is no genuine issue of material fact that Plaintiff had a serious health condition that necessitated medical treatment, whether emergency or otherwise.

Moreover, hours of substantial pain can meet the objective prong of the deliberate indifference test in the delayed medical care context.[44]  "Although 'not every twinge of pain suffered as a result of delay in medical care is actionable,' when the pain experienced during the delay is substantial, the prisoner 'sufficiently establishes the objective element of the deliberate indifference test.'"[45]  The Court finds that Plaintiff can demonstrate the objective component of his delayed medical treatment claim against Adams.

### b.      Subjective Component

Plaintiff cannot meet the subjective component of his Eighth Amendment claims against Adams.  It is undisputed that Adams did not wholly deny Plaintiff treatment; she insisted he follow the appropriate procedure for obtaining non-emergency treatment.  Although she does not "recall precisely," she believes "it is likely Mr. Reynolds was not in immediate distress since it was a day" after his fall in the shower.[46]  Whether he agrees or not, the undisputed facts show that Adams turned Plaintiff away due to her understanding of the IMPP governing emergency care, and her belief that he was not in immediate distress, not because she knew of the extent of

---

[43] *Prince*, 28 F.4th at 1047 (quoting *Al-Turki v. Robinson*, 762 F.3d 1188, 1192–93 (10th Cir. 2014)).

[44] *McCowan v. Morales*, 945 F.3d 1276, 1291 (10th Cir. 2019).

[45] *Al-Turki v. Robinson*, 762 F.3d 1188, 1193 (10th Cir. 2014) (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1292 (10th Cir. 2006)).

[46] Doc. 62-3 ¶ 9.

Plaintiff's injury and disregarded an excessive risk to Plaintiff's health or safety. Under a gatekeeper theory of liability, Plaintiff must come forward with evidence showing that Adams failed to fulfill her "sole obligation to refer or otherwise afford access to medical personnel capable of evaluating a patient's treatment needs when such an obligation arises."[47] Here, the only evidence in the record indicates that Adams fulfilled her role as gatekeeper of the emergency medical clinic. She did not wholly refuse to treat Plaintiff; she evaluated whether he qualified for treatment in the emergency clinic without a sick call, and determined that he did not. She applied the IMPP as she understood it should be applied and did not believe Plaintiff required emergent care. Plaintiff returned within hours using the sick call process and was immediately treated.

There is also no evidence that Adams was aware of and disregarded Plaintiff's substantial pain.[48] She was only aware that he came to the emergency clinic for a suspected broken bone sustained the night before, and that he had become disruptive. Plaintiff repeatedly argues in his summary judgment response that Adams was negligent in refusing to treat him because he presented with a pass for emergency care. But negligence does not suffice under the deliberate indifference standard. In fact, negligence is a defense.[49] Additionally, it is undisputed that Adams believed she was following the IMPP that governed emergency care for the KDOC.

On the medical delay claim, Plaintiff argues that Adams was deliberately indifferent to the pain Plaintiff would experience associated with the delayed treatment he received through the non-emergent care protocol. But Plaintiff has not shown that the delay caused by Adams

---

[47] *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1139 (10th Cir. 2023).

[48] *See McCowan*, 945 F.3d at 1291–92 (finding objective prong met when delay caused the plaintiff to suffer "several hours of excruciating pain," and subjective prong met because evidence showed that the officer knew the plaintiff was "suffering from significant shoulder pain").

[49] *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000).

resulted in substantial harm.  There is nothing in the record that suggests Plaintiff needed wrist surgery due to that delay in care.  And there is no evidence that Plaintiff's recovery was extended or made more difficult by the delay.  In fact, the record does not make clear how long Plaintiff waited between being turned away at the emergency clinic by Adams, and when he was able to return at 12:37 p.m.  During this second visit, his arm was set with a splint, he received a Toradol injection for swelling and pain, and he was directed to take acetaminophen and ibuprofen for pain.  He was scheduled to receive an x-ray the following Monday.  Contrary to Plaintiff's assertions, the record plainly demonstrates his pain did not go untreated until the time he was scheduled for surgery the following week.

Importantly, Plaintiff fails to demonstrate that Adams knew about the risk of harm and pain that Plaintiff would suffer by delaying his medical treatment.  Her affidavit establishes that she turned him away from the emergency clinic because she believed he was not in immediate distress, and because he became disruptive, requiring the SORT team to remove him.  She instructed him to follow the protocol for a nurse visit.  There is no evidence that Adams had the requisite state of mind to support a deliberate indifference claim.  Accordingly, Plaintiff fails to demonstrate a genuine issue of material fact about whether Adams was deliberately indifferent to his medical needs under the Eighth Amendment, and Defendants' motion for summary judgment on the § 1983 claim against Adams for denying him emergency medical treatment is granted.

### 2.    Dr. Wilson

Plaintiff asserts that Dr. Wilson was deliberately indifferent when he failed to transfer Plaintiff to a hospital for an immediate x-ray on June 16, rather than schedule him for an x-ray the following Monday; when he refused to treat Plaintiff's arm; and when he failed to prescribe physical therapy.  There is no genuine issue of material fact that Dr. Wilson did not refuse to

treat Plaintiff's arm. Although Plaintiff challenges the way Dr. Wilson treated his arm, there is no dispute that Dr. Wilson treated him on Friday, June 16, at the LCF clinic. The Court also finds no evidence that Dr. Wilson was responsible for prescribing physical therapy and declined to do so. Dr. Wilson was not Plaintiff's surgeon, and there is no evidence that he was responsible for ensuring Plaintiff's post-surgical physical therapy.[50] Thus, Plaintiff's sole claim against Dr. Wilson is that he was deliberately indifferent by failing to transfer Plaintiff to the hospital on June 16 instead of waiting for an x-ray at LCF the following Monday. Plaintiff argues that this delay caused him to experience three additional days of pain before he could see a specialist and have surgery, and increased the risk of internal bleeding, nerve damage, and lack of motion in his arm.

### a.    Objective Component

When Dr. Wilson treated Plaintiff on June 16, he suspected a wrist fracture. Plaintiff reported constant pain and had an "[o]bvious deformity."[51] And hours of substantial pain can meet the objective prong of the deliberate indifference test in the delayed medical care context.[52] There is no dispute that Plaintiff suffered from a sufficiently serious medical condition. The Court thus proceeds to consider the subjective component of the deliberate indifference test.

### b.    Subjective Component

There is no genuine dispute that Dr. Wilson did not fail to treat Plaintiff's serious medical condition, and that he did not unnecessarily delay medical treatment. During Plaintiff's only

---

[50] *See* Doc. 59-5 at 5. The only evidence about physical therapy is this note from the surgeon at The University of Kansas Health System, that is addressed "To Whom it May Concern," advising that Plaintiff "should work with physical therapy on range of motion (referral included)." *Id.* This note was not directed to Dr. Wilson, and there is no indication that he even received or read it.

[51] Doc. 59-1 at 6.

[52] *McCowan*, 945 F.3d at 1291.

13

visit with Dr. Wilson on June 16, Dr. Wilson directed that Plaintiff's wrist be splinted in order to stabilize it, prescribed a Toradol injection for pain and swelling, and directed him to take both acetaminophen and ibuprofen for pain.

Plaintiff challenges Dr. Wilson's decision to delay his x-ray until the following Monday. He claims that Dr. Wilson should have facilitated transfer to a hospital on Friday, June 16, rather than waiting until LCF had an x-ray technician on duty the following Monday, citing IMPP 16-108D.  That regulation governs the availability of emergency medical, dental, and behavioral health services within KDOC.  It provides, in part, that "[t]he contracted health services provider is to make agreements with area hospital emergency rooms to provide emergency off site care for KDOC residents."[53]  There is no support in the record for Plaintiff's assertion that his condition warranted emergency care off site.  Plaintiff comes forward with no evidence that he would have had a better outcome if he had received an immediate x-ray at a hospital or that he would have received surgery more quickly.  And Dr. Wilson attests that he did not transfer Plaintiff because he believed LCF was able to stabilize Plaintiff's wrist and manage his pain until he could receive an x-ray that next Monday.[54]  His personal medical opinion is that Plaintiff's "injury was swiftly addressed, [Plaintiff] was quickly stabilized, and the type of care required by [Plaintiff] was squarely within the means and expertise of the providers at [LCF]."[55]  Therefore, Plaintiff cannot demonstrate the subjective component of his inadequate treatment claim against Dr. Wilson.

---

[53] IMPP 16-108D, Part I.D (Doc. 62-4).

[54] *See Strain v. Regalado*, 977 F.3d 984, 994 (10th Cir. 2020) (finding no deliberate indifference where there were no allegations about "what other treatment Defendants should have provided or how transferring [the plaintiff] to a hospital would have produced a better outcome").

[55] Doc. 62-7 ¶ 18.

As far as the medical delay claim, there is certainly evidence that Plaintiff suffered pain during the period between his injury and the surgery.  But it is undisputed that Dr. Wilson and others at the clinic treated that pain.  Plaintiff was given a splint, two Toradol injections, and ordered to take over-the-counter pain medication.  Plaintiff was seen early the next Monday morning and diagnosed with a wrist fracture after his x-ray.  The medical notes indicate that when Plaintiff reported to the medical clinic on Monday, June 19, for that x-ray, he had removed the splint.[56]  It is reasonable to infer that at least some of Plaintiff's residual pain by Monday was due to this fact.

By the following day, Tuesday, June 20, Plaintiff had wrist surgery and was discharged the same day.  There is no evidence that he sustained damage due to any delay in the x-ray or surgery.  There are no medical records that show nerve damage, an increased risk of internal bleeding, or any mental health treatment caused by the delay in treatment.  Plaintiff was treated for his complaints of pain each time he reported to the medical clinic between Friday, June 16 and Monday, June 19.  Accordingly, Defendants' summary judgment motion on the § 1983 claims against Dr. Wilson is granted.

### B.  State Law Claims

Plaintiff alleges two claims under Kansas law: (1) negligence, and (2) intentional infliction of emotional distress.  Because the Court grants summary judgment to Defendants on Plaintiff's federal claims, it declines to exercise supplemental jurisdiction over the remaining state law claims.

---

[56] Plaintiff purports to controvert this fact by asserting that medical staff removed the splint, but offers no evidence in support.

Whether to exercise supplemental jurisdiction over state law claims is committed to the Court's sound discretion.[57]  28 U.S.C. § 1367 "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'"[58]  Upon a pretrial disposition of the federal claims, district courts will generally dismiss the state law claims without prejudice.[59]  "When 'the parties have already expended a great deal of time and energy on the state law claims,' it is appropriate for the 'district court to retain supplemented state claims after dismissing all federal questions.'"[60]  "If, however, the parties have not shown they have spent a great deal of time on the state law claims, the 'district court should normally dismiss supplemental state law claims after all federal claims are dismissed.'"[61]  "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary."[62]  The Tenth Circuit has "repeatedly recognized that this is the preferred practice."[63]

Here, there is no compelling reason for the Court to retain jurisdiction over the remaining state law claims and neither party presents an argument to the contrary.  Accordingly, the Court declines to exercise supplemental jurisdiction over the state law claims.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion for Summary Judgment (Doc. 61) is **granted**.

---

[57] *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997).

[58] *City of Chicago*, 522 U.S. at 173 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

[59] *Ball v. Renner,* 54 F.3d 664, 669 (10th Cir. 1995).

[60] *Villalpando ex rel. Villalpando v. Denv. Health & Hosp. Auth.*, 65 F. App'x 683, 688 (10th Cir. 2003) (quoting *United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002)).

[61] *Id.*

[62] *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).

[63] *Gaston v. Ploeger*, 297 F. App'x 738, 746 (10th Cir. 2008).

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend Summary Judgment (Doc. 59) and Defendants' Motion to Strike Plaintiff's Motion to Amend Summary Judgment (Doc. 60) are **moot**. The Clerk is directed to enter judgment in favor of Defendants and terminate this case.

**IT IS SO ORDERED.**

Dated: May 14, 2026

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE
