# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

TEILL REYNOLDS,

      Plaintiff,

      v.

MABEL ADAMS, et al.,

      Defendants.

Case No. 24-3132-JAR

## MEMORANDUM AND ORDER

On May 14, 2026, the Court granted Defendants Mabel Adams and Dr. Bryan Wilson's motion for summary judgment on the remaining federal claims in this matter.[1]  And because the Court granted Defendants' motion for summary judgment, it found two other pending motions moot: Plaintiff's Motion to Amend Summary Judgment[2] and Defendants' Motion to Strike Plaintiff's Motion to Amend Summary Judgment.[3]  Now before the Court is Plaintiff's Motion to Reconsider (Doc. 75) the Court's May 14, 2026 Memorandum and Order ("May 14 Order") ruling on the summary judgment motions.  Under the Court's local rule, no response is required to a motion to reconsider unless the Court establishes a deadline.[4]  No response has been filed; thus, Plaintiff's motion to reconsider is ripe for decision, and the Court is prepared to rule.  As described more fully below, Plaintiff's motion to reconsider is denied.

---

[1] Doc. 73.

[2] Doc. 59.

[3] Doc. 60.

[4] D. Kan. Rule 6.1(d)(3).

## I.    Background

Plaintiff Teill Reynolds, who proceeds pro se and in forma pauperis, brought this civil rights case arising out of his medical treatment for a fractured wrist during his confinement at the Lansing Correctional Facility ("LCF"), which is operated by the Kansas Department of Corrections ("KDOC").  At the time of the Court's ruling, there were two remaining claims for relief against Adams and Dr. Wilson under 42 U.S.C. § 1983: (1) that they were deliberately indifferent to Plaintiff's medical needs in violation of the Eighth Amendment when they failed to properly treat his fractured wrist; and (2) that they were deliberately indifferent to his medical needs in violation of the Eighth and Fourteenth Amendments by delaying his medical care. Plaintiff also alleged claims under Kansas law for negligence and intentional infliction of emotional distress.  The Court granted Defendants' summary-judgment motion on Plaintiff's federal claims and declined to exercise supplemental jurisdiction over the remaining state-law claims.

Specifically, the Court found no genuine issue of material fact as to whether either Defendant was deliberately indifferent to Plaintiff's medical needs.  The Court considered the governing deliberate indifference standard, which has an both objective and subjective component.[5]  The Court found sufficient evidence to demonstrate a genuine issue of material fact on the objective component of Plaintiff's deliberate indifference claims against both Defendants. However, the Court found that the undisputed facts, when viewed in the light most favorable to Plaintiff, did not meet the subjective component of the deliberate indifference test, under which Plaintiff must show that Defendants "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be

---

[5] *See Prince v. Sheriff of Carter Cnty.*, 28 F.4th 1033, 1044 (10th Cir. 2022).

drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference."[6]

And because the Court granted summary judgment on Plaintiff's federal claims, it declined to exercise supplemental jurisdiction over the remaining state-law claims.

In light of these rulings, the Court did not consider the merits of Plaintiff's motion to amend his previously denied summary-judgment motion or Defendants' motion to strike Plaintiff's motion to amend his summary-judgment motion. It found both motions moot.

## II.    Standard

Plaintiff moves the Court to reconsider its May 14 Order based on several alleged errors.

D. Kan. Rule 7.3 governs motions to reconsider and states:

> Except for motions under Fed. R. Civ. P. 59(e) or 60, parties seeking reconsideration of a court order must file a motion within 14 days after the order is served unless the court extends the time. A motion to reconsider must be based on:
>     (1) an intervening change in controlling law;
>     (2) the availability of new evidence; or
>     (3) the need to correct clear error or prevent manifest injustice.

A court's decision is clearly erroneous if it is "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment."[7] Courts in this district have described manifest injustice to mean "direct, obvious, and observable error."[8] "A motion to reconsider is not a second opportunity for the losing party to make its strongest case, to rehash arguments, or to dress up arguments that previously failed."[9]

---

[6] *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (alteration in original) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

[7] *Wright ex rel. Tr. Co. of Kan. v. Abbott Lab'ies, Inc.*, 259 F.3d 1226, 1236 (10th Cir. 2001) (quoting *Brown v. Presbyterian Healthcare Servs.*, 101 F.3d 1324, 1331 (10th Cir. 1996)).

[8] *Gorenc v. Proverbs*, 447 F. Supp. 3d 1110, 1113 (D. Kan. 2020) (quoting *Hadley v. Hays Med. Ctr.*, No. 14-1055, 2017 WL 748129, at *2 (D. Kan. Feb. 27, 2017)).

[9] *Willmore v. Savvas Learning Co.*, 344 F.R.D. 546, 554 (D. Kan. 2023).

Because Plaintiff proceeds pro se, the Court construes his motion liberally and holds it to a less stringent standard than formal pleadings drafted by attorneys.[10]   However, Plaintiff's pro se status does not excuse him from complying with federal and local rules.[11]

### III.     Discussion

In his motion, Plaintiff appears to have reproduced the Court's May 14 Order and inserted his own points of error in bold font.  He does not acknowledge the standard that applies to his motion, but identifies the following points of error: (1) Plaintiff did not receive notice of Defendant's motion to strike his motion to amend summary judgment; (2) the Court should have allowed him leave to amend his previously-denied summary-judgment motion; (3) the Court misconstrued several facts as undisputed; and (4) the Court erred by finding no genuine issue of material fact that either Defendant met the subjective component of the deliberate indifference test.  Because Plaintiff points to no new evidence or intervening change in controlling law, the Court considers whether Plaintiff has demonstrated the need to correct clear error or prevent manifest injustice.

#### A.     Lack of Notice on Motion to Strike

First, Plaintiff argues that he did not receive notice that Defendant moved to strike his motion to amend his summary-judgment motion, which denied him due process since he was unable to respond to the motion.  Out of an abundance of caution, the Court will direct the Clerk to mail Plaintiff a copy of that motion; however, he fails to demonstrate that his lack of notice meets the clear error or manifest injustice standard because the Court did not rule on the merits of either the motion to strike or the motion to amend.  Because the Court found that summary

---

[10] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[11] *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

judgment in favor of Defendants was warranted, it did not consider either motion and determined that they were moot.

### B.    Plaintiff's Motion to Amend

Next, Plaintiff argues that the Court erred by not allowing him an opportunity to amend his previously denied summary-judgment motion.  He argues that he had a right to amend his motion under "rule 15(1) amending as a matter of course."[12]  Again, the Court did not deny Plaintiff's motion to amend.  Instead, it found his request moot because Defendants met their summary-judgment burden on their own motion.  Additionally, Fed. R. Civ. P. 15 does not apply to motions; it only applies to pleadings.[13]  Plaintiff's earlier motion for summary judgment was denied,[14] so there was nothing to amend.  In its October 15, 2025 Memorandum and Order denying Plaintiff's motion for summary judgment, the Court determined that, despite Plaintiff's pro se status, he was subject to the rules of summary judgment practice and his conclusory allegations were not sufficient to meet his burden of demonstrating that summary judgment was warranted.[15]  Thus, there was no clear error in the Court's decision not to rule on Plaintiff's motion to amend.

### C.    Factual Disputes

Plaintiff takes issue with several statements of fact that the Court deemed undisputed based on the summary judgment record.  But, as the Court explained in its May 14 Order,

---

[12] Doc. 75 at 1.

[13] *See, e.g.*, Fed. R. Civ. P. 15(a)(1) ("A party may amend its *pleading* once as a matter of course . . . ." (emphasis added)). *Compare* Fed. R. Civ. P. 8, 10, 12 (governing form and contents of pleadings), *with* Fed. R. Civ. P. 56 (governing summary judgment motions).

[14] Doc. 58.

[15] Nothing in the rules prevented Plaintiff from filing another summary-judgment motion before the dispositive motions deadline elapsed.

pro se plaintiffs may not rely on conclusory allegations to overcome their burden to establish that a genuine issue of material fact exists.[16]  The Court disregarded several factual assertions presented by Plaintiff that were not supported by record evidence.[17]  This was not error; the Court was not and is not required to credit Plaintiff's conclusory assertions.  At the time the summary-judgment motion was filed, Defendants provided Plaintiff with notice of the requirement that he submit evidence countering the facts they asserted, yet he failed to follow that guidance.[18]

For example, Plaintiff faults the Court for crediting Adams's declaration, in which she sets forth her understanding of the governing emergency care regulations, and states that she told Plaintiff that he did not follow the proper procedure to be evaluated for his injury, which she considered non-emergent.  Plaintiff disputes her statement that she told him this, but fails to point the Court to any evidence in support other than his own conclusory assertion in his motion.  Importantly, there was no evidence in the record that controverted Adams's statement that she believed Plaintiff's complaints were non-emergent and that she called the SORT unit because she believed he became disruptive.

Next, Plaintiff cites a note from the Warden at LCF, acknowledging that the prison's X-ray technician was on personal leave on June 16, 2024.  But given the other findings in the record, this fact, even if assumed to be true, was not material.  It is undisputed that Plaintiff did

---

[16] *Hastings v. Campbell*, 47 F. App'x 559, 560 (10th Cir. 2002).

[17] *Sanchez v. Guzman*, 105 F.4th 1285, 1299 (10th Cir. 2024) ("[I]n the summary-judgment context . . . . the plaintiff cannot rest on [his] well-pleaded factual averments; rather, the plaintiff must point to record evidence supportive of the plaintiff's position; this means that, though ordinarily the court accepts plaintiff's version of the facts as the starting point for the legal analysis, that version will be cognizable only if it is supported by record evidence.").

[18] Doc. 63 at 1 ("Any witness statements must be in the form of affidavits.  An affidavit is a sworn statement of fact based on personal knowledge stating facts that would be admissible in evidence at trial.").

not receive an X-ray on June 16 and had to wait until the following Monday when staff returned. Whether the X-ray technician was absent due to personal leave or otherwise does not change the inquiry: whether Dr. Wilson was deliberately indifferent by scheduling the X-ray for Monday, rather than sending Plaintiff to an area hospital for an immediate X-ray.

Plaintiff next takes issue with the Court's crediting evidence that he received Toradol injections several times for pain before he was given an X-ray on June 19, 2024. Plaintiff asserts that he did not receive a Toradol injection before Monday, June 19, 2024. But the medical records do not support his assertion, and he provides no evidence, such as a declaration, to support the contention that the medical records are inaccurate.

Finally, Plaintiff states that he was seen by medical providers for mental health issues after his surgery. But again, there is no evidence to support this other than his own conclusory assertions.

In sum, the Court did not err in finding no genuine issue of material fact on these points because Plaintiff failed to come forward with evidence that would be admissible at trial and instead relied on conclusory assertions.

### D.    Subjective Component of Deliberate Indifference Claims

Plaintiff argues in his motion that the Court erred in finding that he failed to come forward with evidence that supports the subjective component of his deliberate indifference claims. Deliberate indifference has two components: (1) "an objective component requiring that the pain or deprivation be sufficiently serious," and (2) "a subjective component requiring that the offending officials act with a sufficiently culpable state of mind."[19] "In other words, the focus of the objective component is the seriousness of the plaintiff's alleged harm, while the

---

[19] *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991).

focus of the subjective component is the mental state of the defendant with respect to the risk of that harm."[20]  In its May 14 Order, the Court found sufficient evidence in the record to support a jury finding that the objective component of Plaintiff's deliberate indifference claim was met. But the Court determined that Plaintiff failed to present a genuine issue of material fact that Defendants acted with the requisite subjective intent: that they "kn[ew] of and disregard[ed] an excessive risk to [his] health or safety."[21]

In the Tenth Circuit, two theories can satisfy the subjective component of a deliberate indifference claim: "failure to properly treat a serious medical condition ('failure to properly treat theory') or as a gatekeeper who prevents an inmate from receiving treatment or denies access to someone capable of evaluating the inmate's need for treatment ('gatekeeper theory')."[22] The Pretrial Order does not state which of these two theories Plaintiff relies on, but the Court considered them both, as well as his claim that the delay in his care constituted deliberate indifference.  On the delay claim, Plaintiff was required to "show that the delay resulted in substantial harm," which may be satisfied by "lifelong handicap, permanent loss, or considerable pain."[23]  The Court considers his arguments with respect to each Defendant below.

### 1.    Adams

Plaintiff first argues that Adams refused him treatment entirely for his fractured wrist, and that the obviousness of his emergent injury demonstrates that she understood the risk of substantial harm to him by turning him away.  He argues that Adams failed in her role as

---

[20] *Prince v. Sheriff of Carter Cnty.*, 28 F.4th 1033, 1044 (10th Cir. 2022).

[21] *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (citation modified).

[22] *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023) (citing *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000)).

[23] *Requena v. Roberts*, 893 F.3d 1195, 1216 (10th Cir. 2018) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

gatekeeper because she did not evaluate whether he qualified for emergency medical treatment before she turned him away, in violation of IMPP 13-102.

First, there is no evidence in the summary-judgment record that Adams was aware of the extent of Plaintiff's pain, or of any risk associated with requiring him to return to the clinic with a sick pass under what she understood to be the proper protocol.  Adams's affidavit states that she believed she was complying with the regulation that governed emergency care at LCF.  As the Court noted, "emergency care" under the governing IMPP 16-108D does not expressly include treatment of broken bones.  That IMPP defines emergency medical treatment as "[t]reatment of potential life threatening or health endangering incidents or injuries, or acute illness that cannot be deferred until the next scheduled sick call."[24]  Under General Order 13-102, residents are provided with "medical services through either regular sick call for non-emergency requests *or* the twenty-four hour per day availability of emergency sick call in accordance with IMPP 16-107D and this general order."[25]

Adams attested that she turned Plaintiff away based on her belief that he was not in immediate distress.  Because she did not believe Plaintiff required emergency care, she instructed him to put in a sick call and wait for the nursing staff to call and direct him back to the clinic with a pass.  She explained in her affidavit that this policy is for "safety reasons."[26]  While it is undisputed that Plaintiff had a broken wrist and was in pain, it is also undisputed that the injury occurred the night before and did not clearly constitute the type of injury that qualified for emergency care instead of a nurse visit under the IMPP.

---

[24] Doc. 62-4 at 1.

[25] Doc. 9-6 at 1 (emphasis added).

[26] Doc. 62-3 ¶ 8.

Under a gatekeeper theory of liability, Plaintiff must come forward with evidence showing that Adams failed to fulfill her "sole obligation to refer or otherwise afford access to medical personnel capable of evaluating a patient's treatment needs when such an obligation arises."[27]  Here, the only evidence in the record indicates that Adams fulfilled her role as gatekeeper of the emergency medical clinic.  She did not wholly refuse to treat Plaintiff; she determined that he did not qualify for immediate treatment in the emergency clinic without a sick call, and directed him to follow that procedure.  Plaintiff returned soon after and was treated by other providers.  Plaintiff offers no non-conclusory evidence that disputes Adams's understanding of the prison's policies, or her belief that he was not in immediate distress.

Plaintiff argues that the Court erred by failing to credit the obviousness of his need for emergency care.  The subjective component of the deliberate indifference test can be shown by circumstantial evidence, including whether the risk was obvious,[28] "although a prison official may show that the obvious escaped [her] and avoid liability."[29]

> [O]bviousness in the circumstances of a missed diagnosis or delayed referral, while not subject to a precise formulation, requires direct or circumstantial evidence that can arise in several different contexts: (1) a medical professional recognizes an inability to treat the patient due to the seriousness of the condition and his corresponding lack of expertise but nevertheless declines or unnecessarily delays referral, e.g., a family doctor knows that the patient needs delicate hand surgery requiring a specialist but instead of issuing the referral performs the operation himself; (2) a medical professional fails to treat a medical condition so obvious that even a layman would recognize the condition, e.g., a gangrenous hand or a serious laceration; and (3) a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical emergency, e.g., a patient complains of chest pains and the prison official, knowing that medical protocol requires referral or minimal

---

[27] *Lucas*, 58 F.4th at 1139.

[28] *Id.* at 1137.

[29] *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (citation modified).

diagnostic testing to confirm the symptoms, sends the inmate back to his cell.[30]

Adams states in her affidavit that Plaintiff was not in immediate distress and that she believed he was not in need of emergency treatment. None of the three contexts set forth in *Self* are present here. First, there is no evidence that Adams recognized the need for Plaintiff to be treated but declined because she lacked the expertise to do so. Second, the evidence does not demonstrate that Plaintiff's medical condition was so obvious that even a layman would recognize it. Dr. Wilson's medical notes indicate that Plaintiff presented with an "[o]bvious deformity,"[31] but that does not mean he presented as such to Adams. Finally, Adams's affidavit establishes that she did not deny care to Plaintiff despite knowing that the protocol was to provide him with emergency care. To the contrary, she believed that the emergency care protocol did not apply to him. The only evidence Plaintiff relies on to dispute Adams's affidavit are his own conclusory assertions. He did not submit an affidavit or any other circumstantial evidence that would permit the inference that Adams knew of and disregarded an excessive risk to Plaintiff's health or safety. Thus, this Court did not err in granting summary judgment in favor of Adams.

### 2.     Dr. Wilson

Likewise, the Court did not err in granting summary judgment in favor of Dr. Wilson due to lack of evidence that he knew of and disregarded an excessive risk to Plaintiff's health or safety. Plaintiff first argues that Dr. Wilson failed to follow IMPP 16-108D, which he interprets to mean that Dr. Wilson was required to work with an area hospital to treat Plaintiff's wrist immediately. Plaintiff misreads IMPP 16-108D. First, as the Court has already explained, this

---

[30] *Id.* at 1232 (citations omitted).

[31] Doc. 59-1 at 6.

policy only applies to inmates who require emergency care, as that term is defined by the policy. Neither Adams nor Dr. Wilson believed that Plaintiff suffered from a "potential life threatening or health endangering incidents or injuries, or acute illness that cannot be deferred until the next scheduled sick call."[32] The policy provides that *if* there is a medical emergency, it "shall be triaged immediately by healthcare staff members on site, and any necessary treatment will be provided."[33] The policy then provides that the prison's health services provider must make agreements with area hospitals to provide emergency off site care for KDOC residents. The policy does not mandate such care in Plaintiff's situation. Even assuming Plaintiff required emergency care, Dr. Wilson followed the policy by triaging Plaintiff on site—he provided Plaintiff with a splint, pain medicine, and a Toradol injection, and then he ordered an X-ray the following Monday. Once the facility obtained X-ray results on the following Monday, Plaintiff was seen by an orthopedic doctor at the University of Kansas Medical Center ("KUMC") and scheduled within days for wrist surgery. Dr. Wilson attested that he did not transfer Plaintiff because he believed LCF was able to stabilize Plaintiff's wrist and manage his pain until he could receive an X-ray that next Monday.[34] Thus, the Court did not err in finding no genuine issue of material fact on the subjective component of Plaintiff's claim against Dr. Wilson based on the delay in his X-ray.

Next, Plaintiff claims the Court erred in finding that he received Toradol injections prior to Monday, June 19. But this fact is supported by the medical records submitted by Defendants.

---

[32] Doc. 62-4 at 1.

[33] *Id.* at 2.

[34] *See Strain v. Regalado*, 977 F.3d 984, 994 (10th Cir. 2020) (finding no deliberate indifference where there were no allegations about "what other treatment Defendants should have provided or how transferring [the plaintiff] to a hospital would have produced a better outcome").

Plaintiff offers no evidence that creates a genuine issue of material fact other than his own conclusory assertions.

Plaintiff argues that Dr. Wilson was deliberately indifferent by failing to ensure that he received physical therapy after his surgery. The Court addressed this contention in its May 14 Order, explaining that there was no evidence that Dr. Wilson was required to prescribe physical therapy for Plaintiff, or that he understood he was required to do so and disregarded it. The only evidence in the summary judgment record about physical therapy is a note from the surgeon at KUMC that is addressed "To Whom it May Concern," advising that Plaintiff "should work with physical therapy on range of motion (referral included)."[35] There is no evidence that Dr. Wilson received or was aware of this note.

Finally, Plaintiff repeats his unsupported assertion that the delay in receiving an X-ray and surgery worsened his condition. But there is no evidence to support this assertion. There are no medical records that show nerve damage, an increased risk of internal bleeding, or any mental health treatment caused by the delay in treatment. Nor is there any evidence that he would have received surgery more quickly if his X-ray had been performed on Friday instead of Monday. Accordingly, he was unable to show that the delay resulted in substantial harm.

In sum, the Court finds no clear error in its determination that summary judgment must be granted in favor of Defendants on the deliberate indifference claims in this matter. Plaintiff's motion to reconsider is therefore denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion to Reconsider (Doc. 75) is **denied**. The Clerk of Court is directed to mail Plaintiff a copy of

---

[35] Doc. 59-5 at 5.

Defendants' Motion to Strike Plaintiff's Motion to Amend Summary Judgment (Doc. 60) along with a copy of this Order.

**IT IS SO ORDERED.**

Dated: June 29, 2026

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE